H77TABDC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

           v.                           14 CR 716 (VM)

BAKTASH AKASHA ABDALLA,
IBRAHIM AKASHA ABDALLAH, GULAM
HUSSEIN and VIJAYGIRI GOSWAMI,

               Defendants.
------------------------------x
                                        New York, N.Y.
                                        July 7, 2017
                                        3:00 p.m.
Before:

                    HON. VICTOR MARRERO,

                                        District Judge


                         APPEARANCES

JOON H. KIM
     Acting United States Attorney for the
     Southern District of New York
EMIL BOVE
AMANDA HOULE
     Assistant United States Attorneys

LAW OFFICE OF JAMES KOUSOUROS
     Attorneys for Defendant Baktash Akasha Abdalla
JAMES KOUSOUROS

CARDI & EDGAR
     Attorneys for Defendant Ibrahim Akasha Abdallah
DAWN CARDI

FEDERAL DEFENDERS OF NEW YORK
     Attorneys for Defendant Gulam Hussein
SYLVIE LEVINE

LAW OFFICES OF PATRICK JOYCE
     Attorney for Defendant Vijaygiri Goswami
BY:  PATRICK JOYCE
```

1           (In open court)
2           THE COURT:  This is a proceeding in the matter of
3   United States v. Abdalla and others, docket number 14 CR 0716.
4           Counsel, please enter your appearances.
5           MR. BOVE:  Good afternoon, your Honor, Emil Bove and
6   Amanda Houle for the government.
7           THE COURT:  Good afternoon.
8           MS. CARDI:  Dawn Cardi for Ibrahim Abdallah, sitting
9   right over there.  Good afternoon, your Honor.
10          THE COURT:  Good afternoon.
11          MR. JOYCE:  Good afternoon, your Honor, Patrick Joyce
12  on behalf of Mr. Goswami, who is seated closest to you in the
13  jury box.
14          THE COURT:  All right.
15          MS. LEVINE:  Good afternoon, your Honor, Federal
16  Defenders of New York by Sylvie Levine on behalf of Gulam
17  Hussein.  Your Honor, Mr. Hussein is currently hospitalized,
18  and that was communicated by the marshals to the government and
19  to me, and therefore I am waiving his appearance for today.
20          THE COURT:  All right.
21          MS. KOUSOUROS:  Good afternoon, sir, James Kousouros
22  for Baktash Abdalla who is in the jury box second from your
23  right.
24          THE COURT:  All right.  Thank you.
25          Our last conference on this matter occurred on the

1  28th of April.  At that time the government had represented

2  that it had produced the discovery that it then had available,

3  the defendants requested 60 days for review, and we scheduled

4  this conference today as a follow up.

5      Mr. Bove, is there anything else concerning discovery

6  that needs to be produced or any discussions with the

7  defendants concerning dispositions, any other scheduling

8  matters?

9      MR. BOVE:  Yes, Judge.  To update the Court, in May

10 following the last conference we obtained between 20 and 30

11 phones that were seized from the defendants in Africa.  There

12 were two categories of phones, some that were seized in

13 November of 2014 during the original provisional arrest, and

14 then additional phones that were seized in January 2017 in

15 connection with the defendants' expulsion.

16     We obtained a search warrant on May 21st relating to

17 to those phones.  They're currently at a DEA lab being

18 searched.  I understand from communicating with the DEA agents

19 who are managing that process that it's not yet complete, there

20 are some complications with respect to searches and extracting

21 the data, but we hope to complete the searches within 60 days,

22 and if we can, if it's feasible, we will make the contents and

23 the results of the searches available on a rolling basis.

24     In addition to that, your Honor, from the government's

25 perspective, another thing that would take place during that 60

1  days, approximately, we're currently evaluating and
2  investigating whether it makes sense to bring additional
3  charges in the case, specifically charges relating to the
4  obstruction of justice in Africa relating to the extradition
5  proceedings with respect to these defendants and also weapons
6  offenses in furtherance of the currently charged drug
7  trafficking crimes.
8       So we would use the time that I referenced here, the
9  60 days, both to complete the searches and produce the results
10 of those searches, and also to make decisions about whether to
11 seek to file those additional charges.
12      THE COURT:  Thank you.  Any response or comments from
13 any defense counsel concerning the status of the matter,
14 scheduling, and the schedule for your review and consultations?
15      MS. KOUSOUROS:  Thank you, Judge.  If it please the
16 Court, our clients are incarcerated.  So while we understand
17 this is a complicated matter and there is extensive discovery
18 that has been provided and will be provided, we just want to be
19 certain that the provision of the additional discovery related
20 to the searches of these phones will include more than just the
21 search warrants and the affidavits submitted in support of
22 them.
23      As the Court knows, our clients were initially
24 arrested in November of 2014, and so you have got this subset
25 of evidence that was seized and then you have the subset of

1   evidence that was also seized in Africa.  And what we're going
2   to need to know -- if we're able to articulate viable motions
3   here we need to know the circumstances surrounding both arrests
4   and any involvement or lack of involvement by United States
5   agents with respect to arrests.
6        Obviously our invocation of any constitutional rights
7   with respect to extraterritorial searches require us to know
8   whether or not the government -- our government was involved
9   with respect to the searches.  So a search warrant application
10  and affidavit which says nothing more than what the government
11  believes is probable cause to search would not address that.
12       So while we understand that additional time is needed
13  for the provision of discovery, in order to keep at least
14  somewhat of some temporal boundaries in this matter, we would
15  ask the Court to direct the government or at least for the
16  government to indicate whether the circumstances surrounding
17  both searches would be divulged to the defense.
18       THE COURT:  Mr. Bove?
19       MR. BOVE:  Yes, Judge, I think I can address that now
20  in a way that should be sufficient to facilitate motion
21  practice on these issues.
22       In November of 2014 the defendants were arrested by
23  Kenyan authorities pursuant to the request of the United
24  States.  These were provisional arrests made in anticipation of
25  extradition requests.  Extradition requests were transmitted

1    shortly after the provisional arrests in late 2014.
2    Thereafter, one or more of the defendants worked together --
3    this is the government's theory and this is the basis for the
4    obstruction charges that we're contemplating now -- the
5    defendants worked together to avoid extradition by bribing
6    various officials in Kenya.
7         Fast forward to January 2017, the extradition request
8    of the United States having not been granted over that period
9    of time, the Kenyan government made a decision to expel, that
10   is, effectively kick out of the country these four defendants.
11   After that expulsion was undertaken by Kenyan authorities, the
12   DEA agents were in Kenya, took custody of the four defendants,
13   they then flew with the defendants to the Southern District of
14   New York.
15        THE COURT:  Ms. Cardi?
16        MS. CARDI:  Your Honor, I suspect that we also need to
17   know what, if any, involvement the United States government had
18   in persuading the Kenyan government to expel our clients; as
19   they define it, expel.  Our clients define it as kidnap, but
20   the government defines it as expel.  So that would be important
21   also.  Surrounding that expulsion/kidnap we need to know what
22   the involvement of the United States government was in order to
23   persuade the Kenyan authorities to take such action.
24        MR. BOVE:  On that point, Judge, I respectfully
25   disagree.  The expulsion decision was made by a foreign

1  sovereign. If the defendants want to litigate what Ms. Cardi
2  referred to as a kidnapping they can make a motion with regard
3  to the alleged kidnapping and the government will respond to
4  the motion.
5      THE COURT: Yes.
6      MS. KOUSOUROS: Your Honor, perhaps this is something
7  that can be discussed between the defendant and the government,
8  but the reality is that there was a hearing ordered by the
9  Kenyan court scheduled for on or about January 29, at which
10 time our government was directed to produce all evidence in
11 support of the extradition request.
12     The expulsion, so to speak, occurred two days before
13 this hearing, and it is our understanding that had this hearing
14 proceeded without the required showing made by the court in
15 Kenya then the extradition would have been denied. So what
16 we're asking very simply is that the government search its
17 files and make appropriate inquiry of participating agents in
18 order to flesh this out as accurately and as diligently as
19 possible. So our request is simply one in good faith based on
20 at least the circumstances that we have been informed of.
21     THE COURT: Mr. Bove?
22     MR. BOVE: Because that's a little bit more of a
23 specific request, Judge, I would propose that the defendants
24 make that request to us following the conference with citation
25 to the authority for the basis of the request. We'll respond

1  to it and I think we can proceed from there with respect to
2  motion practice.
3          To be clear, the extradition hearing that was just
4  referenced, from the view of the prosecution team, presented
5  extremely grave danger to all of the U.S. witnesses who were
6  requested in these proceedings to show up in Africa on the
7  basis of what we believe was, again, an extensively corrupted
8  proceeding in Kenya.
9          THE COURT:  Yes.
10          MS. KOUSOUROS:  I take no issue with Mr. Bove's
11 statements, and that's why we do believe it's important to know
12 how the expulsion happened in the timing that it did.  It may
13 very well be, and it's understandable that such a showing being
14 required by the court would certainly present our government
15 with significant issues in terms of production.
16          It only calls into question for us -- and again, I'm
17 not saying that the government is misrepresenting anything, it
18 could be that it was misrepresented to the government, it just
19 calls into question this rather timely expulsion decision by
20 Kenyan authorities when the concern here, logically and
21 understandably, would have been that of our government in
22 having to produce these witnesses.  So that is, again, our good
23 faith request.
24          THE COURT:  Mr. Bove, anything else?
25          MR. BOVE:  No, your Honor.

1    THE COURT:  Now let me ask the defendants pertaining
2 to this request, sort of play it out, what do you see as to the
3 process and the forum by which these questions that they're
4 raising concerning the expulsion and the extradition
5 proceedings would be resolved?
6    MS. KOUSOUROS:  We certainly understand, and we have
7 spoken amongst us that it is a very uphill battle even if we
8 were able to demonstrate that, as opposed to an expulsion it
9 was a kidnapping or abduction and a spiriting off to the United
10 States in order to avoid having to conduct that hearing.
11    Nevertheless, there are certain circumstances under
12 which a claim can be made as to an illegal abduction.  That was
13 spelled out by the Supreme Court in <u>Alvarez</u> and cases that
14 followed.  And again, we all acknowledge it's an uphill battle,
15 but nevertheless, to the extent that there is any limited
16 opportunity for the defense to explore that issue, it is this
17 Court that we would deem the proper forum and ask you to deem
18 the proper forum for such a motion.  So that is why we're
19 seeking that information.
20    If in fact it's proven that the Kenyan authorities
21 decided entirely on their own that these defendants should be
22 expelled from the country and that was solitary decision that
23 was made by the Kenyan authorities alone, obviously we have
24 probably worse than an uphill battle.  But given the
25 circumstances and the timing and the government's now stated

1  clear and understandable hesitancy to produce these witnesses

2  at the hearing in January, the circumstances and any

3  involvement by the United States in that decision are important

4  to us.

5  THE COURT:  I understand that they're important.  The

6  threshold issue that I'm raising is to what extent whatever may

7  have happened to these defendants and the circumstances that

8  brought them here are issues within the framework of the

9  proceeding here, or are you saying that the defendants might

10  have some other remedy in some forum, whether in court or

11  somewhere else, not related to the indictment which they're

12  tried for here?

13  MS. KOUSOUROS:  If defendants are illegally abducted

14  from another country and brought here in order for our

15  government to assert jurisdiction, then this Court can hold

16  that it is an illegal abduction for which repatriation is

17  appropriate.

18  Now under *Alvarez* the court set forth -- and there are

19  several other cases that we read as well, that the court set

20  forth a process where we need to first evaluate the treaty

21  between our government and the Kenyan government in terms of

22  whether it provides for extradition.  There needs to be a

23  prohibition in that treaty -- this is my understanding,

24  Judge -- against the kidnapping, and then there needs to be --

25  once the abduction is conducted there needs to be some form of

1   protest from the country from which the defendants are taken.

2   It is a viable claim in this court that can be made, but

3   obviously we need to know whether there was any involvement by

4   our government in the expulsion or abduction, whichever it

5   turns out to be, before we can even address that claim.

6            THE COURT:  Mr. Bove, I think that perhaps this is an

7   issue that warrants some form of meet and confer between the

8   parties to see whether you can narrow the issues and exactly

9   how you tee them up for whatever determination may need be made

10  by this Court or some other court.

11           MR. BOVE:  Yes, your Honor, I think that's sensible,

12  and it does seem like we're veering toward motion practice.  We

13  take all these claims very seriously and we'll talk about what

14  discovery they're requesting and we'll respond to those

15  requests, and I anticipate someone will come back to the Court

16  for further relief.

17           THE COURT:  All right.

18           MR. JOYCE:  May I address the Court briefly?  In terms

19  of the Court asking what forum you expect the issues to be

20  litigated, Mr. Kousouros mentions the issue about abduction,

21  but what he originally spoke about was what the government's

22  involvement was in terms of obtaining the evidence, in other

23  words, the actual seizure of those phones.  And that form would

24  be under a request for a motion to suppress, but we would have

25  to have the information before we could make those motions.

1       THE COURT: Anything else from defense?

2       So the government has suggested that adjournment of
3  approximately 60 days may be in order to give the parties
4  additional time for review of the discovery that the government
5  is in the process of seeking from these phones. So for a date
6  roughly 60 days out.

7       LAW CLERK: Friday, September 22nd at 11:00 a.m.

8       MS. KOUSOUROS: If it's possible to go two weeks
9  further, I'm scheduled to be on trial in the Northern District
10 of California on September 11. I anticipate it to be a
11 two-week trial.

12      LAW CLERK: How about October 6 at 11:00 a.m.

13      MS. CARDI: That's good.

14      MS. KOUSOUROS: That's fine.

15      THE COURT: Mr. Bove, is there a motion on that
16 schedule?

17      MR. BOVE: Yes, your Honor, we ask that time be
18 excluded in the interest of justice until October 6 to allow
19 the government to produce the discovery that we discussed
20 today, to allow the defendants to review it, and to allow the
21 parties to engage with respect to the pretrial motions issues
22 that have been raised.

23      THE COURT: On the motion of the government to exclude
24 adjourned time from speedy time calculations from today through
25 October 6, any objections raised by the defendants?

1          MR. JOYCE:  No, your Honor.

2          MS. CARDI:  No, your Honor.

3          MS. KOUSOUROS:  No, sir.

4          THE COURT:  Hearing none, the government's motion is
5    granted.  I find that the reasons conveyed to the Court warrant
6    this exclusion of time as it is intended to ensure the
7    effectiveness of counsel and to prevent any miscarriage of
8    justice.  The Court is satisfied that the ends of justice
9    served by the granting of this continuance outweigh the best
10   interests of the public and the defendants in a speedy trial.
11   This order of exclusion of time is entered pursuant to the
12   provisions of the Speedy Trial Act, Title 18, USC, Sections
13   3161(h)(7)(B)(2) and (4).

14           I thank you.  There is another matter that the Court
15   wishes to address, and it pertains only to Mr. Abdallah in a
16   letter submitted by Ms. Cardi.  We can address that at this
17   point.  The rest of the defendants are not involved in this, so
18   perhaps they could be excused and the Court could have this
19   discussion with Mr. Abdallah and counsel.

20           (Defendants Baktash Abdalla, Vijaygiri Goswami and
21   defense counsel Kousouros, Levine and Joyce were excused)

22           THE COURT:  Ms. Cardi, on behalf of Mr. Ibrahim
23   Abdallah, submitted a letter to the Court dated July 5, 2017
24   requesting the Court to direct the Bureau of Prisons to permit
25   visitation by Mr. Abdallah's sister, who is here visiting from

Kenya, through July 17.

Ms. Cardi requests that the Court direct that Mr. Abdallah's sister, Ms. Warda Thamis, be permitted to visit the defendant at the MCC on a daily basis. The Court has inquired of the Bureau of Prisons concerning this matter.

The response that the Court received was that the Bureau of Prisons at the MCC has a process and procedure for inmates receiving visitors, and it is limited because the facility can only permit visitation by certain sections of the facility by blocks of some sort, and because there's so many different blocks they assign the visitation to those blocks on particular days, so that it is difficult for the facility to provide for prisoners who are not scheduled for visitation on the day that that particular section of the facility is due creates complications, and that is the reason for the limitations on visitation.

Although they indicated that it could not accommodate daily visitation for these practical and procedural reasons, they did indicate that there are circumstances in which they, at the request of the inmates, permit for longer visitations by relatives than the usual one hour that is permitted.

So that is the response that the Court has at the moment. Ms. Cardi, did you have anything else you may wish to address?

MS. CARDI: Your Honor, respectfully, it's a

bureaucracy, the Bureau of Prisons.  While I understand perfectly bureaucracies need to have rules, there's also exceptions to rules that need to be made for humanitarian reasons.

So we have a young man who is here from Kenya, not a single relative or soul in this country to visit him ever.  We have a case that is going to go on long term.  We have a sister who -- and it's very expensive to travel from Kenya, who comes here and really can't stay for an extended period of time, so she could get a weekly visit of an hour.

And so I don't really accept -- it's not a law, it's an administrative rule.  And frankly, if Mr. Bove, for example, wanted to see my client for a proffer at any given time, as long as it's not Friday afternoon, because they won't do it on a Friday, he would be able to see my client and my client would be able to be with the government for an extended period of time.

I mean I don't accept this bureaucratic response under the circumstances.  You know, we are housing international people.  There's international law.  There's humanitarianism, and I don't think that we need to accept that as okay.

And frankly, as far as the additional time, this is the first -- because before writing to your Honor we have been back and forth with the Bureau of Prisons, we didn't just come to you first, and nobody said anything to us about my client

1    requesting additional time.
2           He should, of course, request additional time, but
3    knowing the procedure of the Bureau of Prisons, he will go back
4    to the Bureau of Prisons today, there will be nobody there who
5    will accept this request, the request will go through some
6    administrative channels, and we will be on July 17 before we
7    get an answer.
8           So I think that your Honor could order additional time
9    and could order additional visits.  And if you didn't feel
10   comfortable doing it every day, at least let's look at the days
11   between now and the 17th and maybe every other day, or maybe --
12   anything is better than what the Bureau of Prisons has offered
13   right now for this family.
14           THE COURT:  Mr. Bove, did you wish to say anything?
15           MR. BOVE:  Yes, your Honor, just a few points.
16           First, as far as I can tell, this submission that your
17   Honor has described was made ex parte at some point, sounds
18   like on July 5.  I haven't seen it and I don't understand the
19   basis for proceeding ex parte with respect to a request like
20   this.
21           Second, Ms. Cardi has dramatically mischaracterized
22   the government's access to defendants in the custody of Bureau
23   of Prisons for the marshals.  That is not at all how it would
24   work if we were to seek access to her client or any other
25   defendant in the district.

            Third, I think it sounds like the Court has gone out
of its way to reach out to the people responsible for this, and
that it does sound like there's some flexibility with respect
to an extended visit.  It seems to me even the hour visits are
well within the norms of international law when talking about a
requested visit from a family member, especially to the extent
that people are willing to be flexible and provide additional
access.

            Finally, there was some sweeping characterizations
made about bureaucracy and the need for rules just now, and
respectfully, Ms. Cardi is no position to, at this point, as
far as I can see, make pronouncements about the bases for the
rules that are put in place by people who are charged with
keeping a large population safe and keeping others safe from
that population.  I don't think there's any basis right now to
question their judgment with respect to those issues.

            And so I think that there is a process in place.  It
seems like it has been followed to some extent and it should be
followed in the future.  And I'm a little confused about the
timing, frankly, because it sounds like the people who wish to
have the visits are here already, sounds like the Court was
notified of the issue.

            Just this week the government learned about it from
your Honor's chambers yesterday.  It seems like if this was as
big a concern as it now is, it should have been thought out in

1  advance so we could have addressed these issues before travel

2  was made to facilitate at least a more acceptable-to-

3  the-defense situation with respect to the visits.

4     THE COURT:  Thank you.

5     MS. CARDI:  Just for the record, your Honor, I filed

6  this ex parte because I did not think that the government had

7  any interest in whether or not my client saw his sister one day

8  a week, three days, or whatever.  It was not in an attempt to

9  be secretive or not to disclose to the government, it's just

10 that they don't represent the Bureau of Prisons.  And whether

11 my client sees his sister one or two days extra, in my view,

12 really did not seem to be something that the government would

13 have any interest in opining on.

14     So I apologize to the government.  In the future I

15 will include them in such a request, and I wanted you and the

16 government to understand why I did not.

17     THE COURT:  All right.  Ms. Cardi, did the Bureau of

18 Prisons give you any, in the discussions you had with them,

19 explanation for whatever it is that they gave you?

20     MS. CARDI:  I think the explanation was exactly the

21 same, your Honor, as they gave you, your chambers.  Exactly.

22     THE COURT:  And given the timing as it is now, when

23 did they say Mr. Abdallah's sister would be able to see him for

24 the first time?

25     MS. CARDI:  His visiting day was Thursday, which was

1    yesterday, and she saw him for the first time yesterday for one
2    hour.
3            THE COURT:  So presumably under that procedure the
4    next visitation would be a week from now.
5            MS. CARDI:  Excuse me for a second, your Honor.
6            (Pause)
7            MS. CARDI:  So your Honor, apparently they gave -- so
8    he did sign with his counselor yesterday what is called a cop
9    out, and he was told by his counselor to give it to the
10   marshals so that he should get a two-hour visit -- it's not the
11   marshals, it's the Bureau of Prisons, the officers -- a
12   two-hour visit, and even though he had it, they only give him a
13   one-hour visit.  So he's scheduled for a visit next Thursday.
14           THE COURT:  All right.  Well, the response of the one
15   hour is not consistent with what the Bureau of Prisons counsel
16   represented to the Court.  We'll look into that and see what
17   might be possible at least for the next time and see whether
18   there's any circumstances under which, given the shortness of
19   the time, whether any other additional visit may be
20   accommodated.
21           MS. CARDI:  Thank you, your Honor.
22           THE COURT:  Thank you.
23                              o0o