UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X     Case No.: 14 CR 716 (S9) (VM)
UNITED STATES OF AMERICA,

                                             **MEMORANDUM OF LAW -**
                                             **IN SUPPORT OF**
      -against-                         **DEFENDANT'S OMNIBUS**
                                             **MOTION**

BAKTASH AKASHA ABDALLA, et al

                            Defendants.
-----------------------------------------------------X

## PRELIMINARY STATEMENT

     The Defendant is charged under this indictment as follows:

          COUNT ONE: 21 U.S.C. §§ 812, 959(a), 959(c), 960(a)(3);
          COUNT TWO: 21 U.S.C. §§ 812, 959(a), 959(c), 960(a)(3);
          COUNT THREE: 21 U.S.C. §§ 959(a), 960(b)(1)(A);
          COUNT FOUR: 21 U.S.C. §§ 959(a), 960(b)(1)(H).
          COUNT FIVE: 18 U.S.C. 924(c); and
          COUNT SIX: 18 U.S.C. 924(c)(1)(A) (ii);
          COUNT SEVEN: 18 U.S.C. 1512(c)(2) [Obstruction of Justice].

     The Defendant, BAKTASH AKASHA ABDALLA, through his attorney,

CHRISTOPHER J. CASSAR, ESQ., submits this memorandum of law in support

of the Defendant, BAKTASH AKASHA ABDALLA, omnibus motion to dismiss

the ninth superseding indictment against the Defendant pursuant to Fed. R. Crim.

P. 12(b)(2) because this Court lacks jurisdiction over the Defendant and pursuant

to Fed. R. Crim. P. 12(b)(3)(A)(i) because venue is improper in this Court.

1

Moreover, the Defendant hereby moves this Court to suppress any identifications of the Defendant because the government's procedures in identifying the Defendant violated the Defendant's constitutional rights under *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Furthermore, Defendant moves pursuant to Fed. R. of Evidence 403, 608 and 609 to prevent the prosecution from introducing any evidence to impeach the Defendant at trial which will be unduly prejudicial to the Defendant. The Defendant also moves to suppress any statements the Defendant made to government agents because such statements were made in violation of the Defendant's constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966). Finally, Defendant respectfully requests the disclosure of any confidential informants in which the Government has relied on in the instant case.

## STATEMENT OF FACTS

The Defendants, Baktash Akasha Abdalla and Ibrahim Akasha Abdalla, are citizens of Kenya. Upon information and belief, defendant, Gaswami Ghulam Hussein, is not citizen of Kenya.

The defendant, Mohammad Asif Hafeez, is detained in London, England where an extradition proceeding is pending. The extradition treaty between the United States and England is the same extradition treaty between the United States

and Kenya. Notably, the United States Government has not forcibly abducted the defendant, Mohammad Asif Hafeez, from England.

In the Government's ninth superseding indictment, the Government has alleged that the Defendant has, along with the two other named defendants in the indictment, conspired to and engaged in narcotics trafficking in Kenya and South Africa in or about 2014 through January 2017. Neither the Defendant, nor any of his co-defendants, have ever traveled to (or are even alleged to have traveled to) the United States.

Rather, as set forth in the fifth superseding indictment by the Government, but not set forth in the current indictment, the Defendant and his co-defendants were allegedly told by a confidential informant ("CS-1") that CS-1 would be taking narcotics to the United States. This statement made by CS-1 is the Government's sole basis for its claim that jurisdiction is proper in the Southern District of New York. The Government has not alleged that the Defendant, or his co-defendants, ever shipped narcotics into the United States.

In the interest of brevity, the Defendant refers the Court to Defendant's prior motion to compel filed with this Court in regards to the facts surrounding the Defendant and his co-defendants' forcible abduction from Kenya by the Government. Based on the facts presented in that prior motion, the Defendant

asserts that his forcible removal from Kenya was in violation of the Kenya-U.S. Treaty and thus the Court lacks jurisdiction over him based on this violation.

## LEGAL ARGUMENT

### I. The Court should grant Defendant's motion to dismiss pursuant to Fed. R. Crim. P. 12(b)(2) because the Court lacks jurisdiction over the Defendant

#### A. The Court does not have jurisdiction over the Defendant because the Government themselves manufactured the jurisdictional nexus between the Defendants and the United States

It is well settled that the federal district courts of the United States "are courts of limited jurisdiction." See *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673 (1994). In fact, federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." See *id.* (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 136-37, 112 S.Ct. 1076, 1080 (1992)). Moreover, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." See *id.* (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-183, 56 S.Ct. 780, 782 (1936)).

"In the context of non-U.S. citizens, 'due process requires the government to demonstrate that there exists a 'sufficient nexus between the conduct condemned and the United States' such that application of the statute would not be arbitrary or fundamentally unfair to the defendant.'" See *United States v. Lawrence*, 727 F.3d 386, 396 (5th Cir. 2013). "A jurisdictional nexus exists when the aim of that

4

activity is to cause harm inside the United States or to U.S. citizens or interests."
See *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011).

In the instant case, the Government has failed to demonstrate that there exists a "sufficient nexus" between the Defendant's alleged conduct and the United States. In the Government's ninth superseding indictment, the Government alleges that the Defendant "conspired to manufacture and distribute, intending and knowing that such substance would be unlawfully imported into the United States . . ." However, the Government fails to allege any specific facts which indicate that the Defendant did in fact intend to have any narcotics distributed or imported into the United States. Simply stating and alleging that the Defendant possessed this requisite mens rea does not satisfy the Government's burden of persuasion as to whether jurisdiction exists. Rather, as stated above, the Government must demonstrate that the "aim" of the Defendant's activity was to "cause harm" inside the United States. See *Al Kassar*, 660 F.3d at 118.

In the Government's prior indictments, specifically the fifth superseding indictment, the Government alleged that CS-1 told the Defendant during a telephone call that he was taking the narcotics to America. Moreover, the fifth superseding indictment alleges that during said telephone call, CS-1 told Defendant that he wanted additional quantities of methamphetamine to give to a broker in the United States. These statements by CS-1 do not satisfy the Government's burden

of persuasion on this issue either. Despite these statements by CS-1, none of the indictments by the Government allege that the Defendant agreed to act in furtherance of any specific narcotics sales or distributions into the United States.

The facts of this case are analogous to the Second Circuit's decision in *Archer*. In *Archer*, the defendants were convicted of using telephone facilities in interstate and foreign commerce to commit bribery, and of conspiring to commit the same offense. See *United States v. Archer*, 486 F.2d 670 (2d Cir. 1973). The defendants appealed their convictions, and at issue on appeal was the construction and interpretation of the Travel Act. See *id.* at 680. The defendants argued that their convictions should be reversed on the grounds that the Government failed to provide sufficient proof of use or agreement to use interstate or foreign telephone facilities to satisfy the requirements of the Travel Act. See *id.* at 672. The Second Circuit reasoned that "[w]hatever Congress meant by §1952(a)(3), it certainly did not intend to include a telephone call manufactured by the Government for the precise purpose of transforming a local bribery offense into a federal crime." The Second Circuit then noted that "[m]anufactured federal jurisdiction is even more offensive in criminal than in civil proceedings." See *id.* at 682. The Second Circuit then reversed the defendants' convictions based on insufficiency of evidence to show a violation of, or a conspiracy to violate, the Travel Act. See *id.* at 683.

In the instant case, like in *Archer*, the Drug Enforcement Agency ("DEA") together with the United States Government, "manufactured federal jurisdiction" when CS-1 stated during a telephone conversation with the Defendant that CS-1 wanted additional quantities of methamphetamine to be imported into the United States. At no point in any of the Government's superseding indictments does the Government allege any specific act or statement by the Defendant which indicates the Defendant had the intent to distribute any narcotics in the United States. As stated above, where the Government fails to meet its burden of persuasion on the necessary jurisdictional nexus, the indictment against the Defendant must be dismissed. See *United States v. Coates*, 949 F.2d 104, 106 (4th Cir. 1991) ("federal jurisdiction will not lie where the sole jurisdictional link rests upon actions taken by the government to create or manufacture a federal offense"). Consequently, this Court has no jurisdiction over the Defendant in this case and thus should dismiss the indictment against the Defendant pursuant to Fed. R. Crim. P. 12(b)(2).

**B. The Court does not have jurisdiction over the Defendant because the extradition of the Defendant from Kenya to the United States was in violation of the Kenya-U.S. Treaty**

As stated above in the statement of facts, the Defendant has already presented to this Court a motion to compel pursuant to Fed. R. of Crim. P. 16, arguing that the Government is in possession of extradition documents which must

be disclosed because of the Defendant's contention that he was kidnapped and forcibly removed from Kenya in violation of the Kenya-U.S. Extradition Treaty.

On July 2, 2018, this Court denied the Defendant's motion to compel. [See Exhibit "A"]. However, the Defendant nonetheless moves to dismiss the indictment for lack of jurisdiction based on the facts and documentation made available to him.

When interpreting a treaty, courts should "first look to its terms to determine its meaning." See *United States v. Alvarez-Machain*, 504 U.S. 655, 663, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992). "The 1931 Extradition Treaty remains in force between the United States and the following 30 countries: . . . Kenya . . . ." *See Yapp v. Reno*, 26 F.3d 1562, 1566 n. 2 (11th Cir. 1994). Generally, "the means used to bring a criminal defendant before a court do not deprive the court of personal jurisdiction over the defendant." *See United States v. Anderson*, 472 F.3d 662, 666 (9th Cir. 2006) (citing *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952)).

However, "the *Ker/Frisbie* doctrine does not apply, and a court is deprived of jurisdiction over an extradited defendant, if either: (1) the transfer of the defendant violated the applicable extradition treaty, or (2) the United States government engaged in misconduct of the most shocking and outrageous kind to obtain his presence." See *id.* (citing *Matta-Ballesteros*, 71 F.3d 754, 762-64 (9th

Cir. 1995)). The relevant text of the 1931 Extradition Treaty [Exhibit "B"] between

the United States and Kenya is as follows:

> "ARTICLE 4
>
> The extradition shall not take place if the person claimed
> has already been tried and discharged or punished, **or is
> still under trial in the territories of the High
> Contracting Party applied to, for the crime or offence
> for which his extradition is demanded.**
>
> **If the person claimed should be under examination or
> under punishment in the territories of the High
> Contracting Party applied to for any other crime or
> offence, his extradition shall be deferred until the
> conclusion of the trial and the full execution of any
> punishment awarded to him."** (emphasis added)

### 1. <u>Defendant has standing to raise a claim of noncompliance with the Kenya-U.S. Extradition Treaty</u>

The Second Circuit recently reiterated the rule that "[a]n extraditee lacks

standing to complain of noncompliance with an extradition treaty unless the 'treaty

[contains] language indicating 'that the intent of the treaty drafters' was that such

benefits 'could be vindicated' through private enforcement."' See *United States v.*

*Barinas*, 865 F.3d 99, 105 (2d Cir. 2017) (citing *Garavito*, 827 F.3d at 247).

However, it is also well-settled law that the extraditee has a remedy (i.e., standing)

to challenge the extradition if the "surrendering government would object." See *id.*

at 105.

While it may be argued that the Defendant, along with his co-defendants, do not have standing to raise the challenge based on the language of the Kenya-U.S. Treaty, it is clear that the Kenya High Court's decision ordering that the Defendant and his co-defendants not be extradited constitutes a protest and objection by the contracting party to the treaty (i.e., Kenya). In *Alvarez-Machain*, the Supreme Court found that "Mexico has protested the abduction of respondent through diplomatic notes . . ." See *United States v. Alvarez-Machain*, 504 U.S. 655, 669 (1992). The "diplomatic notes" objecting to the defendant's abduction in *Alvarez-Machain* is of no distinction from the order of the High Court of Kenya directing that the Defendant and his co-defendants be produced before the High Court on the matter of bail and extradition.

In fact, the Defendant contends that the order from the High Court of Kenya is clearly an "objection" to his abduction by the Kenyan government, just as the *Alvarez-Machain* court found that diplomatic notes were an objection. Particularly in this case, as discussed below, Article 4 of the Kenya-U.S. Treaty (see *supra*) was expressly violated by the United States Government's abduction of the Defendant and his co-defendants while their trials were pending before the High Court of Kenya. The order of the High Court of Kenya was likewise expressly violated in the process, and such order constitutes an express objection from a branch of the Kenyan government to the Defendant's abduction.

10

## 2. **Express Provision of Kenya-U.S. Treaty Violated by Government –** *United States v. Alvarez-Machain*, 504 U.S. 655 (1992) & *United States v. Anderson*, 472 F.3d 662 (9th Cir. 2006)

In *Alvarez-Machain*, a Mexican citizen ("Alvarez-Machain") was indicted

for the murder and kidnap of a DEA Agent. 504 U.S. at 657. Alvarez-Machain

was then forcibly abducted from his medical office in Mexico and flown on a

private plane to El Paso, Texas, where he was arrested by DEA agents. See *id.*

The issue before the Supreme Court was "whether a criminal defendant, abducted

to the United States from a nation with which it has an extradition treaty, thereby

acquires a defense to the jurisdiction of [United States] courts." See *id.*

The Supreme Court found that even though Alvarez-Machain was forcibly

abducted by the United States Government, the Extradition Treaty between the

United States and Mexico did not specifically prohibit forcible abduction of

Mexican citizens, and thus found that the district court had jurisdiction over

Alvarez-Machain's prosecution. See *id.* at 668-69.

In *Anderson*, the defendant appealed his wire fraud convictions arguing that

the district court lacked jurisdiction over him because his extradition violated the

express terms of the Extradition Treaty between Costa Rica and the United States.

See *Anderson*, 472 F.3d at 666-67. The United States government had requested

the defendant's extradition in March of 2002 and the Costa Rican trial court

granted extradition on July 24, 2002. See *id.* at 667. However, at the time of his

11

extradition, the defendant's application for citizenship in Costa Rica was on appeal.  See *id.*

The defendant claimed that his extradition while his naturalization proceedings were on appeal violated the terms of the Extradition Treaty.  See *id.* However, the Ninth Circuit noted that the "United States-Costa Rica Extradition Treaty does not oblige either country to refrain from granting extradition if an appeal regarding the defendant's citizenship status is pending."  See *id.* at 666. Consequently, because the terms of the Extradition Treaty between Costa Rica and the United States did not prohibit extradition in such circumstances, the Ninth Circuit denied defendant's appeal and found that defendant's extradition "complied with the United States-Costa Rica Extradition Treaty."  See *id.* at 667.

Here, unlike the *Alvarez-Machain* and *Anderson* cases, the United States Government violated the express terms of the 1931 Extradition Treaty between Kenya and the United States ("Kenya-U.S. Treaty").  As stated above, Article 4 of the Kenya-U.S. Treaty specifically provides that extradition shall not take place if the defendant "is still under trial in the territories of the High Contracting Party applied to, for the crime or offence for which his extradition is demanded." [Exhibit "B"].  The actions of the DEA in forcibly abducting the Defendant – despite an order of the High Court of Kenya specifically directing that the

12

Defendant not be extradited during proceedings – was a clear violation of the order of the High Court of Kenya and thus violated Article 4 of the Kenya-U.S. Treaty.

### 3. Act Committed by Executive Branch of Foreign Government in Violation of Treaty – *United States v. Knowles*, 390 F. App'x 915 (11th Cir. 2010)

In *Knowles*, the defendant made a motion to dismiss the indictment against him for lack of personal jurisdiction. See *id.* at 928. The defendant argued that the Bahamian executive's decision to extradite him from the Bahamas to the United States violated both Bahamian law and an order from the Bahamian Supreme Court. See *id.*

The *Knowles* Court reasoned that "the Ministry of Foreign Affairs' consent to [defendant's] extradition in Case 425 was an official act of a foreign sovereign, the validity of which we must abstain from questioning under the dictates of the act of state doctrine." See *id.* (internal quotations and citations omitted). Consequently, the Eleventh Circuit upheld the district court's denial of the defendant's motion to dismiss the indictment under the act of state doctrine. See *id.*

Here, it is undisputed that the United States Government was present in Kenya and forcibly abducted the Defendant despite the fact that judicial proceedings were set by the High Court of Kenya to determine whether the Defendant would be released on bail or extradited by the Kenyan Government to

the United States [Exhibits "C" & "D"]. Thus, this action of abducting the

Defendant, conducted solely by the United States DEA, was clearly in violation of

the Kenya-U.S. Treaty and as a result, it is distinguishable from *Knowles*.

### 4. Foreign Government Extraditing Defendant in Violation of the Treaty – *Johnson v. Browne*, 205 U.S. 309 (1907)

In *Johnson*, the main issue was "whether United States courts have the

authority to review the decision of a foreign country granting a United States

extradition request on the grounds that the offense for which the defendant was

sought was in fact not extraditable under the treaty." See generally *Johnson v.

Browne*, 205 U.S. 309 (1907); see also Roberto Iraolo, *Jurisdiction, Treaties, and

Due Process*, 59 Buff. L. Rev. 693, 703 (2011).

The Supreme Court in *Johnson* reasoned that "[w]hether the crime came

within the provision of the treaty was a matter for the decision of the [Canadian]

authorities, and such decision was final by the express terms of the treaty itself."

See *Johnson*, 205 U.S. at 316. Since this decision, various courts have construed

*Johnson* as standing for the proposition that "a foreign government's decision to

extradite an individual in response to a request from the United States is not

subject to review by United States courts." See *United States v. Medina*, 985 F.

Supp. 397, 401 (S.D.N.Y. 1997).

As stated above, the Defendants' forcible abduction from Kenya was an

operation led by – and carried out solely by – the United States DEA.  Thus, it was

the DEA which violated the express terms of the Kenya-U.S. Treaty, not the Kenyan authorities. In fact, as stated above, the High Court of Kenya intended to carry out and make a determination on the issue of extradition itself. However, the DEA deliberately interfered with this process when it forcibly abducted and removed the Defendant and his co-defendants from Kenya.

At a status conference before this Court on July 7, 2017, the United States Government claimed that "the defendants worked together to avoid extradition by bribing various officials in Kenya." The Government then claimed that "the Kenyan government made a decision to expel, that is, effectively kick out of the country these four defendants. After that expulsion was undertaken by Kenyan authorities, the DEA agents were in Kenya, took custody of the four defendants, they then flew with the defendants to the Southern District of New York."

Despite the Government's claims, they have not produced any documentation which proves any of these allegations. The allegation that Defendant and his three co-defendants were "expelled" by the Kenyan government has not been established by the Government at any point prior to the submission of the instant motion.

In fact, this office specifically requested this documentation from the Government via email on Friday, December 29, 2017. However, the Government refused to provide this office with any documentation relating to the Defendants'

alleged "expulsion" from Kenya. The Government has also failed to cite any authority for the proposition that a natural-born citizen of Kenya can ever be "expelled" from their native country (*i.e.*, Kenya).

Moreover, the High Court of Kenya's order directing that all four Defendants be produced before the High Court on January 30, 2017 directly contradicts the Government's assertion at the status conference that the four Defendants were "expelled" from Kenya [Exhibits "C" & "D"].

Based on the foregoing analysis of the relevant case law, this Court should find that the United States Government violated the express terms of Article 4 of Kenya-U.S. Treaty when it forcibly abducted and kidnapped the Defendant from Kenya during the course of Defendants' judicial proceedings before the High Court of Kenya. This Court is not barred from making this ruling based on the act of state doctrine because the DEA – not the Kenyan Government – was solely responsible for the Defendant's forcible abduction from Kenya.

### 5. The Government engaged in outrageous conduct when it abducted the Defendant from Kenya during the pending extradition proceedings

The Second Circuit has recognized that, under the commands of Due Process, courts should "divest [themselves] of jurisdiction over the person of the defendant where it had been acquired as the result of the government's deliberate, unnecessary and unreasonable invasion of the accused's constitutional rights." See *United States v. Toscanino*, 500 F.2d 267, 275 (2d Cir. 1974). "This conclusion

represents but an extension of the well-recognized power of federal courts in the civil context to decline to exercise jurisdiction over a defendant whose presence has been secured by force or fraud." See *id.*

Although most of the cases in which outrageous conduct has been asserted requires some sort of "torture or brutality," [see *United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 65 (2d Cir. 1975)] it has also been held that outrageous conduct exists where the defendant was produced in the jurisdiction "as the result of the government's deliberate, unnecessary and unreasonable invasion of the accused's constitutional rights." See *Toscanino*, 500 F.2d at 275.

In this case, the Defendant was produced before this Court solely by the Government's (*i.e.*, the DEA's) "deliberate, unnecessary and unreasonable invasion" of the Defendants' constitutional rights. Despite the order of the High Court of Kenya and the express language of Article 4 of the Kenya-U.S. Treaty, the DEA took it solely upon themselves to forcibly abduct the Defendants the day after an order was issued by the High Court of Kenya prohibiting the Defendants' removal from its jurisdiction until the High Court rendered an order on the issue.

If this Court finds that it has jurisdiction over the Defendants' case, it will effectively set a precedent that the United States Government may circumvent the mandates of any treaties that the United States has entered into with foreign nations, thereby jeopardizing international relations and bringing into question

whether the United States is required to honor the express terms of a treaty that it

has expressly agreed to abide by. A Due Process violation of this magnitude meets

the "outrageous conduct" standard set forth by the Second Circuit in *Toscanino*,

and thus this Court should "divest itself of jurisdiction over" the Defendants in this

case.

## II. The Court should grant Defendant's motion to dismiss the indictment pursuant to Fed. R. Crim. P 12(b)(A)(3)(i) because venue is improper

In addition to a lack of jurisdiction, venue is also improper in the instant

case. Based on the allegations in the indictment, the Government has failed to

allege sufficient facts to support venue in the Southern District of New York and

thus the indictment must be dismissed pursuant to Fed. R. Crim. P. 12(b)(3)(A)(i).

"The Second Circuit, having recognized that 'there is no single defined

policy or mechanical test to determine constitutional venue,' *United States v. Reed*,

773 F.2d 477, 481 (2d Cir. 1985), applies a 'substantial contacts' test to evaluate

the propriety of venue in any particular district." See *United States v. Barrett*, 153

F.Supp.3d 552, 560 (E.D.N.Y. Dec. 23, 2015). Moreover, "the government bears

the burden of proving the propriety of venue, *see United States v. Tzolov*, 642 F.3d

314, 318 (2d Cir. 2011)," and the government must prove this "by a preponderance

of the evidence." See *id.* "Where, as here, a defendant is charged with multiple

crimes in a single indictment, the government must satisfy venue with respect to

each charge." See *United States v. Davis*, 689 F.3d 179, 185 (2d Cir. 2012).

The Government has failed to meet their burden of proof in the instant case. As alleged in the indictments, the Government contends that the Defendant and his co-defendants performed all of their actions in Kenya. For example, in all counts of the current indictment, the Government alleges that the Defendant and his co-defendants took actions in furtherance of the alleged conspiracy "in Kenya and elsewhere." At no point does the Government allege that the Defendant committed any overt acts in furtherance of these conspiracies in the United States, let alone the Southern District of New York. Despite the Government's contention that the Defendant had the requisite mens rea to distribute narcotics in the Southern District of New York, as stated above, these bare allegations without any evidentiary support (e.g., a statement of intent by the Defendant) cannot be the basis for venue in the Southern District of New York.

Although 18 U.S.C. Section 3238 provides that a criminal trial may be held in the district in which the defendant is arrested or first brought, allowing these proceedings to continue in the Southern District of New York would be contrary to the public policy underlying the venue statutes. In fact, the Second Circuit has held that "[t]o comport with constitutional safeguards . . . [venue] require[s] more than 'some activity in the situs district'; instead, there must be 'substantial contacts,' considering 'the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each

district for accurate factfinding.'"  See *Davis*, 689 F.3d at 186 (citing *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985)).  Consequently, venue is improper in the Southern District of New York because the Government has failed to satisfy its burden of proof with its bare allegations and assertions in the current indictments before this Court.

### III. The Defendant's motion to suppress the evidence of identification should be granted because the identifications of Defendant violated *Wade*

An impermissibly suggestive and unreliable pretrial identification will violate a defendant's right to due process if introduced into a criminal proceeding. See *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); see also *Neil v. Biggers*, 409 U.S. 188 (1972).  "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." See *Neil*, 409 U.S. at 198.

In this case there may have been several pre-trial identifications of the Defendant which were impermissibly suggestive and unreliable pretrial identifications and if introduced at the potential criminal trial would violate the Defendant's right to due process.  Thus, the Defendant moves to suppress any testimony concerning the potential pretrial identifications of the Defendant on the grounds that it would violate the Defendant's constitutional right to due process of

law.  See U.S. Constitution, Amendments V and XIV; see also *Foster v.*

*California*, 349 U.S. 400 (1969); see also *Stovall v. Dennos*, 388 U.S. 293 (1967).

In addition, the Defendant moves to suppress any in-court as well as the

pretrial identification testimony by any witnesses which would identify the

Defendant on the grounds that there is no sufficiently reliable "independent

source" for such testimony.  See *United States v. Wade*, 388 U.S. 218 (1968).

Defendant further moves to suppress all evidence (including tangible property and

statements) which was obtained as a result of or due to the exploitation of the

above described potentially unlawful suggestive identification procedures.  See

*Wong Sun v. United States*, 371 U.S. 471 (1963).  The Defendant requests that this

Motion to Suppress be granted summarily.  In the alternative, the Defendant

requests a hearing to aid the Court in determining the issues raised herein.

## IV. The Defendant moves to suppress any statements made to the government pursuant to *Miranda*

Under the Supreme Court's decision in *Miranda*, any statements made to the

government while the Defendant is being subjected to "custodial interrogation"

must be suppressed if the Defendant had not properly waived his *Miranda* rights.

See *Miranda v. Arizona*, 384 U.S. 436 (1966).  It is important to note that some

courts have "recognized that the Fifth Amendment privilege against self-

incrimination protects nonresident aliens facing a criminal trial in the United States

even where the questioning by United States authorities takes place abroad."  See

*United States v. Suchit*, 480 F.Supp.2d 39, 52, n.21 (D.C. Ct. of Appeals 2007)

(citing *United States v. Bin Laden*, 132 F.Supp.2d 168, 181-87 (S.D.N.Y. 2001);

see also *United States v. Karake*, 443 F.Supp.2d 8, 49 n.71 (D.D.C. 2006) (noting

United States' acknowledgement that "*Miranda* warnings are required where

United States officials conduct [a custodial] interrogation abroad").

At the time of Defendant's arrest, the Government provided him with a

waiver form of his *Miranda* rights. [See Exhibit "E"]. Based on the contents of

this form, it is clear that the Defendant did not validly waive his rights under

*Miranda* because he did not sign the form and wrote on the form that he did not

wish to make any statements to the DEA and/or any government agents. Thus,

without a valid waiver, any statements that the Government may have obtained

from the Defendant while in the custody of the DEA were obtained in violation of

his Fifth Amendment right against self-incrimination under *Miranda* and must be

suppressed or a hearing be granted to decide this motion. The Defendant requests

that this Motion to Suppress be granted summarily. In the alternative, the

Defendant requests a hearing to aid the Court in determining the issues raised

herein.

22

## V. The Defendant's motion to preclude evidence pursuant to Fed. R. of Evidence 403 Fed. R. of Evidence 609 and Fed. R. of Evidence 608 should be granted

The Defendant fears that if he testifies at trial on his own behalf the prosecutor will cross-examine him as to his prior criminal convictions and prior specific criminal and immoral acts. The introduction of such evidence would deprive the Defendant of a fair trial in that it would have a disproportionately prejudicial impact on the Defendant in that the jury would judge the Defendant based on these prior acts, while having minimal probative value on the issue of credibility.

The Defendant therefore moves, pursuant to Federal Rule of Evidence 403 and 609, to preclude the prosecutor from cross-examining the Defendant as to his prior criminal convictions and prior specific criminal and immoral acts. The Defendant requests that the prosecution provide notice of all specific instances of Defendant's prior uncharged criminal, vicious or immoral conduct of which the prosecutor has knowledge and which the prosecutor intends to use at trial for purposes of impeaching the credibility of the Defendant. The Defendant also requests a hearing to determine the admissibility of any such evidence and any evidence of prior criminal convictions.

## VI. Disclosure pursuant to *Brady* and *Giglio*

This case involves a cooperating witness, Vijaygiri Anandgiri Goswami

("Goswami"), who was originally charged under this Indictment (the fifth

superseding indictment – attached to this memorandum of law as Exhibit "F").

Upon information and belief, this cooperating witness was arrested and sentenced

to 25 years on charges of drug trafficking in Dubai, Saudi Arabia, in 1997.

Moreover, upon information and belief, the Government has relied upon numerous

other confidential informants in their case against the Defendant and his co-

defendants.

The Defendant requests the immediate disclosure of the following *Brady* and

*Giglio* materials to permit the Defendant and counsel a reasonable opportunity to

use the information at trial or to explore the information to obtain evidence for use

at the trial.  See *United States v. Amato*, 540 F. 3d 153 (2d Cir. 2008); see also

*United States v. Rodriguez*, 498 F.3d 221 (2d Cir. 2007).

1.  Any and all promises, understanding or agreements, formal or informal,
between the prosecution, its agents and representatives and persons (including
counsel for such persons) whom the prosecution intends to call as witnesses at
trial, together with copies of all documentation pertaining thereto. This request
includes, but is not limited to, such promises, understandings or agreements as may
have been made in connection with other cases or investigations. This requests
includes information concerning any payment of monies to any prospective
witnesses.

2.  Any and all actions, promises or efforts (formal or informal) on the party
of the prosecution, its agents and representatives to aid, assist or obtain benefits of
any kind for any person whom the prosecution considers a potential witness at

trial, or a member of the immediate family of such witness. This request includes but is not limited to: (a) letters to anyone informing the recipient thereof of the witness' cooperation; (b) recommendations concerning licensing, certifications or registration; (c) promises to take affirmative action to help the status of the witness in a profession, business or employment or promises not to jeopardize such status; (d) aid or efforts in securing or maintaining the business or employment of a witness; (e) aid or efforts concerning a new identity for the witness and his family; (f) listing payments of money and subsidies to the witness; or (g) any other activities, efforts, or promises similar in kind or related to the items listed in (a) through (f) above.

3. Any threat made to the witness or any member of his family by any law enforcement officer or prosecutor, which could arguably be developed on cross-examination.

4. A list of any and all requests, demands or complaints made to the government by the witness which arguably could be developed on cross-examination to demonstrate any hope or expectation on the part of the witness for favorable governmental action on his behalf (regardless of whether or not the government has agreed to provide such favorable action).

5. Any material not otherwise listed that reflects or evidences the motivation of the witness either to cooperate with government or any bias or hostility against the Defendant.

6. Any and all evidence that any person who is a prosecution witness or prospective prosecution witness in this case is or was suffering from any physical or mental disability or emotional disturbance, drug addiction or alcohol addiction at any time during the period of the indictment to the present.

7. Any and all oral or written statements (formal and informal) by the prosecution, its agents and representatives to any person (including counsel for such persons) whom the prosecution intends to call as a witness at trial pertaining in any way to the possibility, likelihood, course or outcome of any governmental action – state or federal, civil or criminal – or immigration matters against the witness, or anyone related by blood or marriage to the witness.

8. Any and all evidence of criminal conduct – state or federal – on the party of any person whom the prosecution intends to call as a witness at trial, of which the prosecution, its agents or representatives have become aware.

9. Information as to any judicial proceeding in any criminal case involving the witness as an unindicted co-conspirator, aid or and abettor, or Defendant.

10. Any statements or documents including but not limited to, grand jury testimony and federal, state and local tax returns, made or executed by any potential prosecution witness at the trial in this action, which the prosecution knows, or through reasonable diligence, should have reason to know, is false.

11. The names and addresses of all persons whom the prosecution, its agents and representatives believe to have relevant knowledge and/or information with reference to the charges contained in the indictment but whom the prosecution does not propose to call as witnesses at trial.

12. *Any exculpatory information given before the grand jury.*

13. Any witness's rap sheet or criminal history report.

14. The Defendant also requests the above information not only as to the government witnesses who will appear at trial, but also to out-of-court declarants. See *United States v. Jackson*, 345 F.3d 59 (2d Cir. 2003).

## CONCLUSION

Based on the foregoing, the Defendant respectfully requests that this Court grant the following relief:

(i)    Grant the Defendant's motion to dismiss pursuant to Fed. R. Crim. Pro. 12(b)(2) on the grounds that this Court lacks jurisdiction over the Defendant;

(ii)   Grant the Defendant's motion to dismiss pursuant to Fed. R. Crim. Pro. 12(b)(3)(A)(i) on the grounds that venue is improper in the Southern District of New York;

(iii)   Grant the Defendant's motion to suppress any evidence of pretrial identifications, or in the alternative, grant the Defendant's motion for a hearing on such issue;

(iv)   Grant the Defendant's motion for a hearing on any potential evidence of the Defendant's prior bad or immoral acts and prior crimes that may be used to impeach the Defendant under Fed. R. of Evidence 403, 608 and 609;

(v)   Grant the Defendant's motion to suppress any evidence of statements made by the Defendant to the Government and/or its agents because such statements were obtained in violation of the Defendant's Fifth Amendment rights against self-incrimination under *Miranda*;

(vi)   Grant the Defendant's motion under *Brady* and *Giglio* for disclosure of any and all confidential informants and witnesses that the Government has relied on or intends to rely on at trial; and

(vii)   Any such other and further relief as this Court deems just and proper.

WHEREFORE, the Defendants requests that the Court grant the relief

sought herein and for such other and further relief as is just and proper.

Dated:  Huntington, New York
        August 10, 2018

                                        Yours, etc.,

                                        CHRISTOPHER J. CASSAR, P.C.
                                        _____/s/_____
                                        By: Christopher J. Cassar (CC 9520)
                                        Attorneys for Defendant
                                        *BAKTASH AKASHA ABDALLA*
                                        13 East Carver Street
                                        Huntington, New York 11743
                                        (631) 271-6596